J-S52031-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FABIAN ALEXANDER COOK, | : | |
| | : | |
| Appellant | : | No. 447 MDA 2018 |

Appeal from the PCRA Order February 12, 2018
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004747-2008

BEFORE:   BENDER, P.J.E., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:        **FILED NOVEMBER 21, 2018**

Fabian Alexander Cook (Appellant) appeals from the February 12, 2018 order dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

Just before midnight on September 7, 2008, Dimitri Francois and Julio Arroyo (collectively, the victims) encountered Joseph Caston on a street in Reading, Pennsylvania.  Caston appeared ill and in need of assistance.  As the victims began to assist Caston, Appellant and Richard Lopez approached.  Appellant pointed a handgun at Arroyo's head and forced the victims to the ground.  Appellant, Caston, and Lopez took various items from the victims, including a book bag, an iPod, two cell phones, and a gold chain, before fleeing on foot.

---

*Retired Senior Judge assigned to the Superior Court.

The victims called police to report the armed robbery from a payphone before chasing after their assailants. Officer Dinger responded to the armed robbery call and encountered Francois, who reported that the assailants were close by. Francois entered Officer Dinger's marked police vehicle and directed him towards the vicinity of the robbery. Francois informed Officer Dinger that he had spotted three men with the stolen book bag. When Officer Dinger stopped his vehicle near the three men, Appellant took off running. Officer Dinger, along with Officer McClure, another officer who responded to the scene as back-up, chased Appellant on foot. Officer McClure caught up with Appellant and ordered him to get on the ground before handcuffing Appellant and conducting a pat-down. After Appellant stood up, he conducted a second pat-down, this time including a search of Appellant's pockets. Officer McClure found a cell phone and gold chain in Appellant's pocket but returned them to the pocket, not realizing at the time that they were the victims' stolen property. The officers then detained Appellant in the back of a patrol vehicle.

While Appellant was in the patrol vehicle, Francois informed the officers that Appellant was the person who held the gun and robbed him at gunpoint. The officers then placed Appellant under arrest. During the search incident to the arrest, the officers again discovered the victims' gold chain and cell phone. After Appellant was arrested, the other victim, Arroyo identified Appellant at the scene as being one of the robbers.

After Appellant was charged with various crimes, Paul Yessler, Esquire, of the public defenders' office, was appointed to represent Appellant. Following a two-day jury trial on February 12-13, 2009, Appellant was convicted of one count each of robbery, possessing instruments of crime, terroristic threats, recklessly endangering another person (REAP), and conspiracy to commit robbery.

Appellant requested to proceed *pro se* at sentencing. Following a waiver-of-counsel hearing, the trial court permitted Appellant to proceed *pro se* with Attorney Yessler as stand-by counsel. On February 19, 2009, Appellant was sentenced to an aggregate term of 13 to 55 years of incarceration. After Appellant *pro se* filed a post-sentence motion alleging the ineffectiveness of Attorney Yessler, the trial court permitted Attorney Yessler to withdraw as stand-by counsel and denied Appellant's post-sentence motion.

Appellant *pro se* filed a notice of appeal, and appellate counsel was appointed. On December 15, 2009, this Court affirmed Appellant's sentence in part and vacated in part. ***Commonwealth v. Cook***, 990 A.2d 40 (Pa. Super. 2009) (unpublished memorandum). Because Appellant's sentence for REAP exceeded the statutory maximum, this Court remanded to the trial court for resentencing. ***Id.*** On April 26, 2010, the trial court resentenced Appellant to an aggregate term of incarceration of 13 to 53 years.

On December 27, 2010, Appellant timely filed *pro se* a PCRA petition. The PCRA court initially appointed Osmer Deming, Esquire to represent Appellant on appeal, but after learning that Attorney Deming represented Appellant's co-conspirator, the PCRA court permitted Attorney Deming to withdraw. On January 13, 2011, the PCRA court appointed Lara Glenn Hoffert, Esquire, to represent Appellant.

Although the PCRA court had ordered counsel to file an amended petition by March 4, 2011, the record reflects no filings from Attorney Hoffert until November 29, 2011. On that date, Attorney Hoffert filed the first of four petitions for an extension of time to file an amended petition, stating that she needed more time due to Appellant's incarceration.[1] **See** Petition for Extension, 11/29/2011; Petition for Extension, 2/21/2012; Petition for Extension, 3/27/2015; Petition for Extension, 5/28/2015. The PCRA court granted Attorney Hoffert's extension requests each time. Order, 12/2/2011; Order, 2/24/2012; Order, 3/3/2015; Order 6/2/2015. Attorney Hoffert finally filed an amended PCRA petition on June 4, 2015. The record contains no reasonable explanation as to why Attorney Hoffert needed

---

[1] In the meantime, Appellant sent various *pro se* filings to the PCRA court, which purported to be supplements to his petition. Because Appellant was represented by Attorney Hoffert, and this Commonwealth prohibits hybrid representation, these filings were legal nullities. **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016). The record reflects that the clerk of courts docketed the filings and forwarded them to Attorney Hoffert in accordance with Pa.R.Crim.P. 576(A)(4).

almost four and one-half years to amend the PCRA petition, or why three years elapsed between two of Attorney Hoffert's extension requests.

After the petition was finally amended, the Commonwealth filed a response, and a hearing was conducted on September 16, 2015. At the hearing, Appellant and Appellant's trial counsel, Attorney Yessler, testified regarding Appellant's allegations of ineffective assistance rendered by Attorney Yessler. After one extension each, Appellant filed a post-hearing brief on March 18, 2016, and the Commonwealth filed one on May 19, 2016. For reasons that are unexplained by the record, the PCRA court did not rule upon Appellant's amended PCRA petition until February 12, 2018, when it issued an order and memorandum dismissing Appellant's petition.[2] This timely-filed appeal followed.[3]

On appeal, Appellant sets forth five issues for our review, which we reorder for ease of disposition.

---

[2] These lengthy delays are unacceptable. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus has an essential role in ensuring the timely resolution of PCRA matters." *Commonwealth v. Renchenski*, 52 A.3d 251, 260 (Pa. 2012) (citing *Commonwealth v. Porter*, 35 A.3d 4, 24–25 (2012) ("[T]he court, not counsel, controls the scope, timing and pace of the proceedings below.")). Additionally, "post-conviction counsel must 'act expeditiously so as to reduce unnecessary delays and ensure the efficient administration of justice.'" *Id.* (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1104 n.11 (Pa. 2012)).

[3] Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

A. Whether the PCRA court erred in denying Appellant's amended PCRA petition where trial counsel rendered ineffective assistance of counsel in failing to challenge the legality of Appellant's arrest and in not moving to suppress the physical evidence and on-scene identification evidence?

B. Whether the PCRA court erred in denying Appellant's amended PCRA petition where trial counsel was ineffective for failing to request a *Kloiber*[4] charge and/or cautionary instruction on the identification testimony presented at trial?

C. Whether the PCRA court erred in denying Appellant's amended PCRA petition where trial counsel was ineffective for failing to communicate sufficiently with Appellant in the course of plea bargain discussions?

D. Whether the PCRA court erred in denying Appellant's amended PCRA petition where trial counsel was ineffective for failing to object to the admission of the co-defendant's guilty plea transcript into evidence without seeking a curative instruction explaining that the co-defendant's guilty plea could not be used as substantive proof of the existence of a conspiracy or used to determine Appellant's guilt, as required by law?

E. Whether the PCRA court erred in denying Appellant's amended PCRA petition where trial counsel was ineffective for failing to object to the testimony of official court reporter Vicky Brady and, further, for failing to seek to stipulate that, if called to testify, [] Brady would confirm the accuracy and authenticity of the transcript?

Appellant's Brief at 5-6 (unnecessary capitalization and answers omitted).

We begin with our standard of review.

---

4 *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954) (requiring an instruction to jury to receive testimony of witness regarding identity with caution when witness did not have opportunity to clearly view defendant, equivocated in identification of defendant, or had difficulty identifying defendant in the past).

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

*Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

"[C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." *Commonwealth v. Brown*, __ A.3d __, 2018 WL 5046812, at *12 (Pa. filed Oct. 17, 2018).

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa. Super. 2018) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

Following a review of the certified record and the briefs for the parties, we conclude that the opinion of the Honorable James M. Bucci thoroughly

addresses Appellant's first three issues and applies the correct law to facts that are supported by the record. *See* PCRA Court Opinion, 3/28/2018, at 2-12, 16-18. We discern no error or abuse of discretion in the PCRA court's treatment of these issues. Therefore, we adopt the specified portions of the PCRA court's opinion of February 12, 2018, as our own and affirm the PCRA order as to these issues based upon the reasons stated therein.[5]

We now turn to Appellant's final two issues. Appellant argues that Attorney Yessler was ineffective for failing to object to the admission of the guilty plea transcript of Appellant's co-defendant, Caston, without seeking a curative instruction explaining that Caston's guilty plea could not be used as substantive proof of the existence of a conspiracy or to determine Appellant's guilt. Appellant's Brief at 33-39. Similarly, he argues that Attorney Yessler should have objected to or sought to stipulate to a court reporter's testimony authenticating Caston's guilty plea transcript to avoid the introduction of cumulative evidence. *Id.* at 39-42.

Like Appellant, Caston was charged in connection with the armed robbery. Prior to Appellant's trial, Caston pleaded guilty to robbery and conspiracy to commit robbery. During his guilty plea colloquy, Caston implicated Appellant as being one of his co-conspirators. Specifically, Caston

_____

[5] The parties shall attach a copy of the PCRA court's February 12, 2018 opinion to this memorandum in the event of further proceedings.

- 8 -

agreed that the Commonwealth's factual summary was accurate, which included averments that on the night of the incident, Appellant pointed a semi-automatic pistol directly at the victims, threatened to kill them, and proceeded, along with Caston and Lopez, to rob the victims. Commonwealth Exhibit 9 (N.T. of Caston's guilty plea hearing, 1/9/2009, at 4).

Despite Caston's guilty plea, Caston testified as a defense witness at Appellant's trial. In response to Attorney Yessler's questions, Caston testified that he had participated in the incident in question along with two friends named Spaz and Black, and Appellant was not involved. N.T., 2/12-13/2009, at 212-14. Caston acknowledged that he had pleaded guilty to robbery and conspiracy to commit robbery, but stated that he did not remember with whom he said he conspired at his guilty plea hearing, even after reviewing the transcript of his testimony. *Id.* at 209-11. As part of cross-examination, the prosecutor quoted Caston's statements in the guilty plea transcript implicating Appellant, but Caston still insisted he did not remember making such statements. *Id.* at 226-29.

The Commonwealth called the court reporter who transcribed the transcript from Caston's guilty plea hearing in rebuttal. During her testimony, the prosecutor requested to publish a portion of the transcript to the jury, but the record is not clear if the trial court permitted the publication because a sidebar followed and there is nothing further in the transcript regarding the request. *Id.* at 242. The court reporter verified the

guilty plea proceeding was accurately transcribed, and read to the jury the same portion implicating Appellant that the prosecutor had read during his cross-examination of Caston. *Id.* at 240-44. Although the transcript was admitted as an exhibit with no objection, *id.* at 244, Attorney Yessler objected to its being sent to the jury room during deliberations, and the trial court sustained the objection. N.T., 2/12/2009-2/13/2009 (Closing Speeches through End of Trial), at 35.

On appeal, Appellant argues that Attorney Yessler should have requested that the trial court instruct the jury that Caston's guilty plea could not be considered as evidence of Appellant's guilt. Appellant's Brief at 36. He argues that Attorney Yessler had no reasonable basis for failing to request such an instruction and the failure "substantially increased the likelihood that he would be convicted because the jury may well have failed to find a reasonable doubt based upon their knowledge of [Caston's] guilty plea colloquy naming [Appellant] as his co-conspirator." *Id.* at 38. He further argues that Attorney Yessler should have objected to or sought a stipulation to the court reporter's testimony to avoid the jury's hearing Caston's statements implicating Appellant for a second time. *Id.* at 39-42.

This Court has held that it is error to introduce a co-defendant's plea without a cautionary instruction not to consider the plea as evidence of the defendant's guilt. *Commonwealth v. Boyer*, 856 A.2d 149, 155 (Pa. Super. 2004). "[T]he defendant has a right to have his guilt or innocence

determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." ***Commonwealth v. Geho***, 302 A.2d 463, 465-66 (Pa. Super. 1973) (*en banc*) (citation omitted). "It is incumbent, therefore, upon the trial judge to give adequate and clear cautionary instructions to the jury to avoid 'guilt by association' as to the defendant being tried." ***Id.*** at 466 (citation omitted).

In the instant case, the PCRA court concedes that the trial court "may have erred" by failing to instruct the jury regarding Caston's testimony, even without counsel's request for one. PCRA Court Opinion, 3/28/2018, at 13. However, it concludes that Appellant did not demonstrate the third prong of the test for ineffectiveness of counsel because he did not prove "he was significantly prejudiced" and the outcome of the trial would have been different, because the jury was free to believe Caston's trial testimony despite his inconsistent testimony at his own plea hearing one month before the trial. ***Id.*** at 14; ***see also id.*** at 14-16 (reaching the same conclusion as to the court reporter's testimony). The PCRA court emphasized that Appellant insisted that Attorney Yessler call Caston as a witness against Attorney Yessler's advice, which resulted in the Commonwealth's introduction of the guilty plea transcript to impeach Caston's trial testimony. ***Id.***

The fact that Appellant demanded that Attorney Yessler call Caston as a witness against counsel's advice does not fully resolve the issue of whether

Attorney Yessler then rendered ineffective assistance of counsel by failing to request a cautionary instruction when the Commonwealth impeached Caston with the guilty plea transcript on cross-examination.[6]   Nor does it address whether Attorney Yessler should have objected to or sought to have stipulated to the court reporter's testimony.  Nevertheless, for the reasons that follow, Appellant has not convinced us to disturb the PCRA court's dismissal of his petition.[7]

Even assuming *arguendo* that there is arguable merit to Appellant's contention that an instruction was warranted under these circumstances pursuant to **Geho**,[8] Appellant's claim fails because he did not prove that he

_____

[6] The only claim that Appellant has preserved relates to counsel's failure to request a jury instruction upon the Commonwealth's introduction of Caston's guilty plea transcript, not the underlying decision to call Caston as a witness. **See** Appellant's Concise Statement, 4/2/2018, at 1; Appellant's Brief at 5.

[7] This Court is not bound by the rationale of a PCRA court and may affirm the PCRA court's order on any basis.  **Commonwealth v. Wilcox**, 174 A.3d 670, 674 (Pa. Super. 2017).

[8] **Geho** and its progeny involve situations where the jury became aware of a co-defendant's guilty plea when the co-defendant changed his plea in the middle of trial or when the Commonwealth initiated the introduction of the plea.  Had Appellant not called Caston as a witness, the jury would not have been aware of the outcome of Caston's criminal charges as his case had been severed from Appellant's case prior to trial.   While the Commonwealth did initiate the introduction of the plea in this case, it was on cross-examination to impeach Caston, not as part of its case-in-chief.  Appellant clearly opened the door to Caston's impeachment by calling him as a witness despite Caston's implication of Appellant in his guilty plea colloquy one month prior to Appellant's trial.  However, given our disposition, we need not definitively determine whether **Geho** applies to this scenario.

- 12 -

was prejudiced by counsel's failure to request a jury instruction. When confronted with the same issue, this Court in *Commonwealth v. Boyer*, 962 A.2d 1213 (Pa. Super. 2008), held that on PCRA review, an appellant must plead and prove a "reasonable probability that the trial outcome would have been different if a [guilt-by-association] cautionary instruction had been given." *Boyer*, 962 A.2d at 1215. This Court concluded that despite the admission of Boyer's confession into evidence, Boyer could not demonstrate that he was prejudiced from the failure of his counsel to request an instruction. *Id.*

As in *Boyer*, there was other evidence establishing Appellant's guilt. In the instant case, the jury heard evidence that the two victims got a good look at Appellant during the robbery, later enabling them to identify Appellant at the scene and in court as the robber with the gun. N.T., 2/13/2009-2/14/2009, at 36-39, 81, 85-86, 91, 98-99, 172-78. The jury also heard testimony that Caston and Lopez participated in the robbery with Appellant, and Appellant and Caston were found with some of the victim's stolen property on the night of the incident. *Id.* at 91-97, 178-86. Thus, even if Attorney Yessler had requested a guilt-by-association cautionary instruction, it is not reasonably probable that the trial outcome would have been different. Likewise, even if Attorney Yessler had stipulated to or objected to the court reporter's testimony, it is not reasonably probable that the outcome would have been different. Because Appellant failed to show

that he was prejudiced by the lack of an instruction or the admission of the

court reporter's testimony, these issues fail.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/21/2018

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE COURT OF COMMONS PLEAS |
| : | BERKS COUNTY, PENNSYLVANIA |
| : | CRIMINAL DIVISION |
| v. : | |
| : | CP-06-CR-0004747-2008 |
| : | |
| FABIAN COOK : | ASSIGNED:   BUCCI, J. |

## DISCUSSION AND ORDER TO DISMISS PCRA PETITION

AND NOW, this 12th day of February, 2018, following a hearing on Petitioner's Petition

for Post-Conviction Relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541

*et seq.*, pursuant to Pennsylvania Rule of Criminal Procedure 907(1), it is hereby ORDERED

that the PCRA Petition is DISMISSED and Petitioner's request for collateral relief is DENIED

for the reasons set forth more fully below.

## PROCEDURAL HISTORY

Following a jury trial held on or about February 12-13, 2009, Fabian Cook ("Petitioner")

convicted of one count of Robbery,[1] one count of Possessing Instruments of Crime,[2] one count of

Terroristic Threats,[3] one count of Recklessly Endangering Another Person,[4] one count of Theft

by Unlawful Taking,[5] and one count of Conspiracy to Commit Robbery.[6] Petitioner was

represented at trial by Paul Yessler, Esquire.

On February 18, 2009, this Court sentenced Petitioner to consecutive sentences of six to

twenty years' incarceration for Robbery; one to five years' incarceration for Possessing

Instruments of Crime; one to five years' incarceration for Terroristic Threats; one to five years'

incarceration for Recklessly Endangering Another Person; and four to twenty years'

---

[1] 18 Pa.C.S. § 3701(a)(1).
[2] 18 Pa.C.S. § 907(b).
[3] 18 Pa.C.S. § 2706(a)(1).
[4] 18 Pa.C.S. § 2705.
[5] 18 Pa.C.S. § 3921(a).
[6] 18 Pa.C.S. § 903(a)(1).

BERKS COUNTY
2018 FEB 12 AM 10: 38
CLERK OF COURTS

-1-

incarceration for Conspiracy to Commit Robbery, making an aggregate sentence of thirteen to fifty-five years' incarceration.

On April 20, 2009, Appellant filed a timely *pro se* Notice of Appeal to the Pennsylvania Superior Court. This Court ordered Appellant to file a Concise Statement on April 27, 2009. On May 11, 2009, Appellant requested an extension of time to file his Concise Statement. The Court granted his request on May 13, 2009. On May 20, 2009, Appellant filed a timely Concise Statement raising four issues.

On December 15, 2009, the Superior Court affirmed in part and vacated in part Petitioner's sentence. The Superior Court remanded the matter for resentencing, as Petitioner's original sentence on the charge of Reckless Endangerment exceeded the statutory maximum. On April 26, 2010, pursuant to instruction by the Superior Court, Petitioner's sentence was amended, making Petitioner's sentence an aggregate term of thirteen to fifty-three years of incarceration. Petitioner was represented on appeal by Melissa M. Bleecher, Esquire.

On December 27, 2010, Petitioner filed a *pro se* Petition for Post-Conviction Relief pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA"). This Court appointed Lara Glenn Hoffert, Esquire, to represent Petitioner in the disposition of his PCRA claim. On June 4, 2014, Attorney Hoffert filed an Amended PCRA Petition on Petitioner's behalf. This Court conducted an evidentiary hearing on the Amended Petition and counsel was ordered to file briefs thereafter. Upon consideration of all the foregoing, and based on all the reasons set forth more fully below, we now enter an order dismissing Petitioner's PCRA Petition.

## APPLICABLE LAW

Disposition of the Petition is governed by the PCRA and the decisional law that flows from the PCRA and its predecessor, the Post-Conviction Hearing Act. The PCRA was enacted as

-2-

a means of providing collateral relief for persons who have either been convicted of crimes they did not commit or persons who are serving illegal sentences. 42 Pa.C.S.A. § 9543(a)(2). Pennsylvania law provides that, in order to qualify for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated defects listed in 42 Pa.C.S.A. § 9543(a)(2). The petitioner is also required to establish that the issues raised in his PCRA Petition have not been previously litigated or waived. 42 Pa.C.S.A. §§ 9543(a)(3), 9544. *See also Commonwealth v. Morris*, 684 A.2d 1037, 1041 (Pa. 1996).

At the hearing, the burden is on the petitioner to establish, by a preponderance of the evidence, that his conviction was the result of one of the specifically-enumerated defects and further that that defect has not been previously litigated or waived. 42 Pa.C.S.A. §9543(a)(3) (1998). The standard of review of a PCRA court's grant or denial of relief is limited to examining whether the trial court's determination is supported by the evidence of record and whether it is free of legal error. *Commonwealth v. Owens*, 750 A.2d 872 (Pa. Super. 2000); *see also Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 2000); *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999).

## PETITIONER'S PCRA ISSUES

In his Amended PCRA Petition, Petitioner, by and through counsel, raises five claims of ineffective assistance of trial counsel, as well as a challenge to the legality of his sentence. We will address each of the claims below.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Under Pennsylvania jurisprudence counsel is presumed effective, and the petitioner bears the burden of proving otherwise. *Commonwealth v. Hall*, 701 A.2d 190, 200-01 (Pa. 1997). The

test for ineffectiveness consists of three prongs: (1) the claim is of arguable merit; (2) counsel had no reasonable basis for his or her actions or inactions, and (3) actual prejudice resulted, in that the outcome of the proceedings would have been different but for the actions or inactions of counsel. *See Commonwealth v. McGill*, 832 A.2d 1014, 1020 (Pa. 2003) and *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 1987), *adopting Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish any of the three prongs necessarily results in the dismissal of the claim. *Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 1999).

To establish the prong of prejudice, a defendant must demonstrate that "but for the act or omission in question, the outcome of the proceedings would have been different". *Commonwealth v. Rios*, 920 A.2d 790, 799 (Pa. 2007). Further, under the PCRA, in order to form the basis for post-conviction relief, counsel's ineffectiveness must have so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. § 9543(a)(2)(ii).

## I. TRIAL COUNSEL'S FAILURE TO FILE SUPPRESSION MOTIONS

### A. *TERRY* FRISK/REASONABLE SUSPICION

Petitioner first claims that trial counsel was ineffective for failing to challenge the legality of Petitioner's arrest. Specifically, Petitioner claims that he was stopped and frisk without the requisite reasonable suspicion, and further, that the *Terry* frisk went beyond the scope of a protective search and trial counsel should have filed a motion to suppress items found in Petitioner's pockets.

"The mere failure to file a suppression motion does not constitute ineffectiveness." *Commonwealth v Smith*, 675 A.2d 1221, 1228 (Pa. 1996) (citing *Commonwealth v. Stovko*, 475 A.2d 714, 720 n.2 (Pa. 1984)). Rather, a defendant must establish that counsel lacked a

-4-

"reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." *Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989) (citing *Kitrell v. Dakota*, 540 A.2d 301, 306 (Pa. Super. 1988)).

Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may perform a limited search for weapons without a warrant, even without probable cause, when the officer reasonably believes that the person may be armed and dangerous. 392 U.S. at 27; *accord Commonwealth v. Zhahir*, 751 A.2d 1153 (Pa. 2000). In order to determine whether *Terry* frisk was warranted, courts must employ a dual analysis, inquiring (1) whether the officer's action in conducting the stop was proper, and (2) whether the stop and frisk was reasonably related to the circumstances that justified the initial stop. *See Zhahir*, 751 A.2d at 1153 (Pa. 2000).

To determine reasonableness, courts must consider "the specific reasonable inferences which [the police officer] is entitled to draw from the facts in light of his experience." *Id.* at 1158 (citing *Terry*, 392 U.S. at 27). Importantly, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

In the instant case, Officer Christopher Dinger of the City of Reading Police Department immediately responded to the scene of the crime. Notes of Testimony, Jury Trial, 2/12/09-2/13/09, at 166-168 (hereinafter "N.T., Jury Trial"). Officer Dinger subsequently encountered the two victims on the street and asked them to accompany him in the patrol vehicle. N.T., Jury Trial, at 171. At the same time, Office Bradley McClure was on routine patrol when he heard Officer Dinger on the radio requesting assistance in looking for an armed robbery suspect. N.T.,

Jury Trial, at 130-31, 172. As Officer McClure drove to the area in question, he observed Officer Dinger's patrol car and followed him. N.T. Jury Trial, at 132-33.

As Officer Dinger and the victims crossed over Franklin Street, one of the victims observed the assailants, including Petitioner, walking on the south side of Cherry Street and informed Officer Dinger. N.T., Jury Trial, at 172-173. As soon as Officer Dinger stopped his patrol vehicle, a suspect, later identified as Petitioner, fled. N.T., Jury Trial, 174-176.

Officer Dinger and Officer McClure chased Petitioner on foot and ultimately apprehended him. N.T. Jury Trial, at 133-34, 172-75. Petitioner obeyed Officer Dinger's command to get on the ground, and Officer McClure cuffed Petitioner's hands behind his back. N.T., Jury Trial, 134-35, 175-76. At this time, one of the victims identified Appellant as the assailant who brandished the handgun during the robbery. N.T., Jury Trial, at 177. While Petitioner was still on the ground, Officer McClure did a quick pat-down of Petitioner's outer clothing for weapons. N.T., Jury Trial, at 134-135.

After Petitioner stood up, Officer McClure did a more thorough search for weapons, going through items in Petitioner's pockets. N.T., Jury Trial, at 135-136. Petitioner was placed under arrest for robbery shortly thereafter, and a more thorough search of his person was performed. N.T., Jury Trial, at 139-140, 177-180. The reason for the search of Petitioner's pockets is unclear and does not appear in the record.

Based on the facts in the record, the police officers acted properly in stopping Petitioner, and the frisk was reasonably related to the circumstances that justified the initial stop. Officer Dinger responded to a call for an armed robbery. While in the patrol vehicle with Officer Dinger, one of the victims observed Petitioner and his companions walking, and informed Officer Dinger that they were the robbers. Officer Dinger then stopped the vehicle, chased Petitioner on foot,

-6-

and ultimately apprehended him, at which time one of the victims identified Petitioner as the robber who held the gun. Because Petitioner was suspected of committing a crime, and because police had reason to believe he was armed and dangerous, the *Terry* frisk was proper. Notably, at the PCRA Hearing, trial counsel testified that he did not file a suppression motion because he believed there were no viable suppression issues to raise. Notes of Testimony, PCRA Hearing, 9/16/15, at 41-42, 52-56 (hereinafter, "N.T., PCRA Hearing").

Further, even if Officer McClure exceeded the scope of a pat-down by searching Petitioner's pockets, Petitioner was placed under arrest minutes thereafter and the items would have inevitably been discovered during the more thorough search of his person conducted incident to arrest. *See Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009)(citing *Nix v. Williams*, 467 U.S. 431 (1984))(discussing the inevitable discovery doctrine). In sum, trial counsel had a reasonable basis for not filing a motion to suppress, and this claim of ineffective assistance therefore fails.

## B. PETITIONER'S ARREST/PROBABLE CAUSE

Petitioner further claims that his arrest was not supported by probable cause and trial counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of an illegal arrest.

It is axiomatic that an arrest, or custodial detention, must be supported by probable cause at the time the arrest takes place. *See, e.g., Commonwealth v. Ellis*, 663 A.2d 1043, 1047 (Pa. 1995). Whether there was probable cause is a fact-sensitive determination based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213 (1983); *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985). "Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at [the time of the

-7-

arrest], including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime" *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (2006)(internal citation omitted).

Based upon these principles, the Court finds that officers possessed the requisite probable cause to believe that a robbery was committed and Petitioner was involved in the commission of said robbery. Officer Dinger heard the call from dispatch that an armed robbery had just occurred. N.T., Jury Trial, at 167. He immediately responded to the scene of the crime where he encountered one of the victims, who then entered Officer Dinger's vehicle. N.T. Jury Trial, at 166-171. The victim subsequently spotted Petitioner and his companions and identified them as the robbers to Officer Dinger. N.T., Jury Trial, at 172-173.

When Officer Dinger stopped the vehicle to get out, Petitioner and his companions fled. N.T., Jury Trial, 174-176. When the officers ultimately apprehended Petitioner, the victim identified Petitioner as the robber who pointed the gun. N.T., Jury Trial, at 136-137, 177. After this identification was made, Petitioner and his companions were placed under arrest and a more thorough search of their persons was conducted incident to arrest. N.T., Jury Trial, at 178-182.

Thus, in light of the facts and circumstances within the officers' knowledge at the time of Petitioner's arrest, the officers had reason to believe that a robbery occurred and that Petitioner was involved in said robbery. The officers were responding to a call for an armed robbery. When the victim was riding in the patrol vehicle with Officer Dinger, the victim spotted Petitioner and his companions and identified them as the robbers. After Petitioner fled and was ultimately apprehended, before Petitioner was *Terry* frisked, the victim specifically identified Petitioner as the robber who held the gun. Given these facts, Petitioner's arrest was supported by probable

cause, and trial counsel was not ineffective for failing to file a motion to suppress evidence on this basis.

## C. OUT-OF-COURT IDENTIFICATION OF PETITIONER

Petitioner claims that trial counsel was ineffective in failing for failing file a motion to suppress evidence obtained as a result of an illegal identification procedure. Specifically, Petitioner alleges that the on-scene identification was highly suggestive and therefore improper.

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Meachum*, 711 A.2d 1029, 1034 (Pa. Super. Ct. 1998) (quoting *McElrath v. Commonwealth*, 405 Pa. Super. 431, 592 A.2d 740, 742 (1991)). Suggestiveness is merely "one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *Id.*

Factors to be considered in the likelihood of a misidentification include: "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Commonwealth v. Edwards*, 762 A.2d 382, 391 (2000) (internal citations omitted). Notably, "[t]he opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis." *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa. Super. 1998). The corrupting effect of the suggestive identification should be weighed against all of the factors. *Edwards*, 762 A.2d at 391.

In the instant case, Petitioner argues that the out-of-court identification procedure was suggestive. However, the facts in the record reflect otherwise. At trial, the victims were

questioned on cross-examination regarding the lighting in the area during the robbery and their ability perceive events at the time. Notably, they testified that the middle of the street was well-lit and they were therefore able to see Petitioner clearly during the robbery. See N.T., Jury Trial, at 60-61; 115-120. Further, one of the victims observed the direction in which the robbers fled from the scene of the crime and followed the robbers on foot while the other victim called the police. N.T, Jury Trial, at 43-46.

When a police vehicle arrived in the area, one of the victims flagged it down, entered the vehicle, and directed the officer toward the location of the robbers. N.T., Jury Trial, at 171. Shortly thereafter, within fifteen minutes, the victim spotted the robbers and informed Officer Dinger, who then stopped the car to get out. N.T. Jury Trial, at 57,173-174. The assailants attempted to flee and Officer Dinger pursued Petitioner on foot. N.T, Jury Trial at 175-176. The victim was still in the police car when Petitioner attempted to flee and was able to clearly see Petitioner, and the victim identified Petitioner as the robber who pointed the gun—without any prompting by officers—after Petitioner was taken into custody. N.T., Jury Trial, at 48-50, 177.

In sum, the victims were able to clearly see Petitioner at the time of the crime; the victim identified Petitioner and his companions as the robbers when he was in the car with Officer Dinger looking for them and ultimately spotted them; the out-of-court identification of Petitioner occurred very shortly thereafter, within fifteen minutes; the victim identified Petitioner as the robber who pointed a gun without prompting by officers once Petitioner was apprehended; and the victims' identification of Petitioner was not shaken at trial on cross-examination. The out-of-court identification of Petitioner was therefore not improper and trial counsel was not ineffective for failing to file a suppression motion on this issue.

## II. *KLOIBER* JURY INSTRUCTION REGARDING IDENTIFICATION TESTIMONY

Petitioner alleges that trial counsel was ineffective for failing to request a jury instruction

pursuant to *Commonwealth v. Kloiber,* 106 A.2d 820 (Pa. 1954), regarding the identification

testimony presented at trial. *Kloiber* states, in pertinent part:

> Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of a fact'. []
> * * *
> On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber,* 106 A.2d at 826–27 (internal citations omitted).

A *Kloiber* instruction is not required where the eyewitness testimony is unequivocal, consistent,

and independently based. *See Commonwealth v. Johnson,* 615 A.2d 1322, 1336 (Pa. Super.

1992).

Here, as discussed above, the victims were clearly able to identify Petitioner at the time

of the robbery due to the well-lit street, one of the victims followed Petitioner and the robbers on

foot from the scene of the crime until they were apprehended by police shortly thereafter, and

one of the victims again identified Petitioner was the robber who pointed the gun after Petitioner

was apprehended by police. Importantly, the victims' identification of Petitioner remained

unshaken even after cross-examination.

Notably, at the PCRA hearing, trial counsel testified that he did not request a *Kloiber*

instruction because there was no equivocation or failure to identify Petitioner as one of the

-11-

robbers prior to or during trial, as the victims' identification of Petitioner was unequivocal at Petitioner's preliminary hearing as well. N.T., PCRA Hearing, at 33-35, 56-57.

In sum, the victims' identification of Petitioner was clear and unequivocal at the time of arrest, preliminary hearing, and trial. Trial counsel believed this to be the case as well. Because a *Kloiber* instruction is not warranted in such circumstances, trial counsel had a reasonable basis for not requesting such an instruction, and Petitioner therefore cannot establish that trial counsel was ineffective in this regard.

## III.   ADMISSION OF CO-DEFENDANT'S GUILTY PLEA INTO EVIDENCE

Petitioner alleges that trial counsel was ineffective for failing to object to the admission of the transcript of co-defendant Joseph Gaston's guilty plea hearing into evidence without requesting a cautionary jury instruction thereon.

It is well-established that a co-defendant's guilty plea cannot be considered as evidence against the defendant who elects to stand trial. *See Commonwealth v. Geho*, 302 A.2d 463, 465 (Pa. Super. 1973). Thus, where one or more of several charged defendants plead guilty and such evidence is introduced, "it is incumbent . . . upon the trial judge to give adequate and clear cautionary instructions to the jury to avoid 'guilt by association' as to the defendant being tried." *Id.* at 466; *accord Commonwealth v. Boyer*, 856 A.2d 149, 155 (Pa .Super. 2004)

In the instant case, co-defendant Joseph Caston, who previously pleaded guilty, was called as a defense witness at trial and testified that Petitioner was *not*, in fact, one of the other two individuals with whom Mr. Caston committed the robbery. N.T., Jury Trial, at 211-14. The Commonwealth then confronted Mr. Caston on cross-examination with his guilty plea transcript as a prior inconsistent statement pursuant to Pa.R.E. 613, which provides, in pertinent part:

(a) Witness's Prior Inconsistent Statement to Impeach. A witness may be examined concerning a prior inconsistent statement made by the witness to

-12-

impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement. Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

(2) the witness is given an opportunity to explain or deny the making of the statement; and

(3) an adverse party is given an opportunity to question the witness.

Pa.R.E. 613

When the three requirements within subsection (b) are satisfied, the prior inconsistent statement is admissible to impeach the witness's testimony. *See Commonwealth v. Charleston*, 16 A.3d 505, 527 (Pa. Super. 2011).

In accordance with the requirements of Rule 613, the Commonwealth confronted Mr. Caston on cross-examination with the facts he admitted under oath at his guilty plea hearing, during which he named Petitioner as one of his co-conspirators. N.T., Jury Trial, at 226-28. The transcript of Mr. Caston's guilty plea hearing was marked and admitted as evidence, but was not permitted to go to the jury during deliberations.

No cautionary charge regarding Mr. Caston's plea was requested by trial counsel, nor given to the jury by the Court. The Court may have erred in this regard. However, the Court finds that Petitioner was not significantly prejudiced as a result of trial counsel's failure to request a cautionary instruction regarding the guilty plea.

Notably, at the PCRA hearing, trial counsel testified that he was strongly opposed to calling Mr. Caston as a witness at trial, as he was aware of his admissions during the guilty plea hearing. N.T., PCRA Hearing, at 43-48, 62-68. Trial counsel expressed these concerns to Petitioner, but Petitioner insisted on calling Mr. Caston as witness nonetheless. N.T., PCRA

-13-

Hearing, at 65. As a result, Petitioner himself, contrary to his attorney's advice, opened the door for the Commonwealth to introduce impeachment evidence, including prior inconsistent statements that were contained in the transcript of Mr. Caston's guilty plea hearing.

Had Petitioner not insisted on calling Mr. Caston, the guilty plea transcript would not have been introduced, as the Commonwealth only introduced the transcript pursuant to Rule 613 in order to impeach the testimony proffered by Mr. Caston at trial. Regardless of the introduction of the guilty plea, the jury was still free to believe Mr. Caston's trial testimony. *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) ([T]he finder of fact . . . is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.).

In sum, Mr. Caston testified *on Petitioner's behalf*, at the insistence of Petitioner in spite of trial counsel's advice, and testified that Petitioner was *not* involved in the robbery. The transcript of Mr. Caston's guilty plea was only introduced on cross-examination to contradict his testimony. The jury, as the fact-finder, was still free to believe Mr. Caston's trial testimony absolving Petitioner of any involvement in the robbery. Petitioner therefore cannot establish that he was significantly prejudiced and that the outcome of the trial would have been different had trial counsel requested a cautionary jury instruction regarding Mr. Caston's guilty plea. This claim of ineffective assistance therefore fails.

IV.    TESTIMONY OF COURT REPORTER REGARDING CO-DEFENDANT'S GUILTY PLEA TRANSCRIPT

Petitioner alleges that trial counsel was ineffective for failing to object to the testimony of official court reporter Vicky Brady, and, further, for failing to seek to stipulate that, if called to testify, Ms. Brady would confirm the accuracy and authenticity of the transcript. This claim is closely related to the previous claim regarding Petitioner's allegation that trial counsel was

-14-

ineffective for failing to request a cautionary instruction regarding the admission of Petitioner's co-defendant's guilty plea.

At trial, as discussed above, the Commonwealth read a portion of co-defendant Mr. Caston's guilty plea transcript implicating Petitioner as an accomplice in order to challenge the co-defendant's testimony at trial that Petitioner did not commit the robbery. N.T., Jury Trial, 227-228. The Commonwealth also presented the testimony of the official court reporter, Vicky Brady, who transcribed Mr. Caston's guilty plea hearing, in order to authenticate the transcript, specifically including statements the co-defendant made under oath that had already been read by the Commonwealth as extrinsic evidence pursuant to Pa.R.E. 613(b) in order to show that Mr. Caston's trial testimony was inconsistent with his statements made under oath at the time of his guilty plea. N.T., Jury Trial, 236-244.

Petitioner claims that he was prejudiced by trial counsel's failure to object to Ms. Brady's testimony, as it was merely cumulative of other evidence, and trial counsel was therefore ineffective in this regard. However, even if the portion of the colloquy read aloud by Ms. Brady was cumulative because some of the statements had already been read by the Commonwealth, Petitioner cannot establish that he was significantly prejudiced by trial counsel's failure to object to Ms. Brady's testimony, for the same reasons discussed above.

Specifically, the portion of the Mr. Caston's guilty plea transcript read aloud by the Commonwealth, and later by Ms. Brady in order to authenticate the transcript, was only introduced to contradict the Mr. Caston's trial testimony. Mr. Caston was called as a defense witness at Petitioner's request and testified favorably for Petitioner, stating that Petitioner was not involved in the robbery. N.T., Jury Trial, 211-14.

Therefore, the guilty plea introduced to contradict this testimony was not significantly prejudicial to Petitioner, as the jury was still free to believe the co-defendant's trial testimony that Petitioner was not involved in the crime. *See DeJesus*, 860 A.2d at 107. Even if the portion of the transcript read aloud by Ms. Brady was cumulative of evidence read by the Commonwealth, Petitioner cannot establish that he was prejudiced by trial counsel's failure to object to Ms. Brady's testimony such that the outcome of the trial would have been different if trial counsel had objected. Therefore, this claim of ineffective assistance fails.

## V. TRIAL COUNSEL'S COMMUNICATION WITH PETITIONER REGARDING A PLEA OFFER

Petitioner alleges that trial counsel was ineffective for failing to adequately communicate with Petitioner during the course of plea bargain discussions, thereby depriving Petitioner of sufficient information to make an informed decision whether to accept or reject a plea offer. Specifically, Petitioner claims that trial counsel failed to communicate regarding: the total amount of time Petitioner could be sentenced to, including the possibility of receiving consecutive sentences; the potential in calling Petitioner's co-defendant Mr. Gaston as a witness; and the pros and cons of pleading guilty.

The United States Supreme Court has espoused the general rule that "defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134 (2012). Additionally, counsel must explain the advantages and disadvantages of accepting or rejecting a plea offer. *See* Commonwealth v. Copeland, 554 A.2d 54, 60 (Pa. Super 1988).

In the instant case, the Commonwealth offered Petitioner a plea bargain of five to ten years' incarceration, and counsel informed Petitioner of such. N.T., PCRA Hearing, at 23. Petitioner now claims that he rejected that plea based upon lack of guidance from trial counsel.

-16-

At the PCRA hearing, Petitioner testified that trial counsel communicated the plea bargain offer extended by the Commonwealth prior to trial and explained the maximum sentence for each offense, but did not explain that after trial the deadly weapon enhancement would apply and the Court could impose consecutive sentences. N.T. PCRA Hearing, at 22-26.

Petitioner also testified that he was unaware prior to trial that Mr. Caston could be impeached with the transcript of his guilty plea hearing. Petitioner testified that if trial counsel had informed him of these possibilities, he would have pleaded guilty. N.T., PCRA Hearing, at 22-26. In response to these allegations, trial counsel testified at the PCRA hearing that he did, in fact, inform Petitioner that if he went to trial he would be facing the application of the deadly weapon enhancement. N.T, PCRA Hearing, at 59-60. Trial counsel also explained to Petitioner the possibility of receiving consecutive sentences. N.T., PCRA Hearing, at 32-33, 58-60. Specifically, trial counsel testified that he informed Petitioner he would be facing a total of sixty-seven years' incarceration if he were to receive the maximum sentence for each charge. N.T., PCRA Hearing, at 58.

Based upon this record, the Court finds that trial counsel fulfilled his obligations with regard to the plea offer. Trial counsel communicated the terms of the plea offer to Petitioner and explained the possible ramifications of going to trial, including the possibility of consecutive sentences, the maximum possible sentence Petitioner could receive, and the applicability of the deadly weapon enhancement. Petitioner therefore fails to establish that trial counsel was ineffective for failing to communicate with him regarding the terms of the plea offer extended by the prosecution.

Petitioner also fails to prove that trial counsel was ineffective for failing to communicate with him regarding his trial strategy involving calling Mr. Caston as a witness. At the PCRA

-17-

hearing, trial counsel testified that, contrary to his advice, Petitioner insisted on calling Mr. Caston as a witness. N.T., PCRA Hearing, 43, 65-66. Indeed, Petitioner admitted that it was his idea to call Mr. Caston. N.T., PCRA Hearing, at 23, 29. Trial counsel knew prior to trial that Mr. Caston had pleaded guilty to conspiring with Petitioner to commit the robbery. N.T., PCRA Hearing, at 42-43, 62-64. Trial counsel informed Petitioner that Mr. Caston would name Petitioner as a co-conspirator, and actually arranged to meet with Mr. Caston prior to trial, as trial counsel anticipated that his testimony would be inconsistent with the facts placed on the record during his guilty plea hearing. N.T., PCRA Hearing, at 43, 65-66.

Against trial counsel's advice, Petitioner insisted upon calling Mr. Caston as a witness. N.T., PCRA Hearing, at 43-35, 61-62. Because Petitioner participated in this decision-making regarding trial strategy, he is barred from raising trial counsel's ineffectiveness on the issue. *See Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002) (internal citation omitted)("[A] defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision."). Accordingly, this claim of ineffective assistance fails.

## LEGALITY OF SENTENCE

Finally, Petitioner contends that he is serving an illegal sentence pursuant *to Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime must be submitted to a jury and proven beyond a reasonable doubt. 133 S. Ct. at 2151.

In the instant case, Petitioner alleges that the Court's application of the deadly weapon enhancement was impermissible. The Court sentenced Petitioner to an aggregate term of thirteen

-18-

to fifty-five years' incarceration, based upon his prior record score and in accordance with the applicable sentencing guidelines. Transcript of Proceedings, 2/18/09, at 9, 22.

The Commonwealth initially sought the application of the mandatory sentence of five years of confinement for offenses involving firearms pursuant to 42 Pa.C.S. § 9712.1.[7] However, based upon Petitioner's prior record score and the application of the deadly weapon enhancement,[8] the applicable sentencing guidelines exceeded the mandatory sentencing provision.[9] Thus, the record reflects that no mandatory minimum was sought by the Commonwealth, nor imposed by this Court. *See* Transcript of Proceedings, 2/18/09, at 14-15, 22. Therefore, *Alleyne* is inapposite. Moreover, *Alleyne* does not apply retroactively in the context of collateral relief. *See Commonwealth v. Riggle*, 119 A.3d 1058, 1067 (Pa. Super. 2015); *Commonwealth v. Miller*, 102 A.3d 988 (Pa. Super. 2014).

Although no mandatory minimum was sought and *Alleyne* does not apply retroactively in a PCRA setting, Petitioner nonetheless asserts that the Court's application of the deadly weapon enhancement was impermissible and *Alleyne* should apply. Even if *Alleyne* did apply retroactively, the Superior Court has held that *Alleyne* does not apply to the deadly weapon enhancement. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) ("If the [deadly weapon] enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range. Therefore, neither of the situations addressed in *Alleyne* and *Apprendi* are

---

[7] In pertinent part, § 9712.1 states: "[A]ny person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) . . . shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement . . . ." § 9712.1(a).

[8] Petitioner had a prior record score of 4. The deadly weapon enhancement was applied to Count 1, Robbery, and Count 4, Recklessly Endangering Another Person. Transcript of Proceedings, 2/18/09, at 9.

[9] The standard range for Count 1, Burglary, which had the highest gravity score of all the charges, was sixty-six months to seventy-eight months. Transcript of Proceedings, 2/18/09, at 9.

-19-

implicated.). This claim therefore lacks merit and Petitioner is entitled to no PCRA relief on this issue.

## CONCLUSION

For all of the foregoing reasons, it is **ORDERED** and **DECREED** that the collateral relief sought by Petitioner is DENIED and Petitioner's PCRA Petition is hereby DISMISSED.

Petitioner is hereby notified that he has the right to appeal this Order to the Superior Court of Pennsylvania. An appeal must be taken within thirty (30) days from the date of this Order.

BY THE COURT:

JAMES M. BUCCI, J.

-20-